IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERESA D. VARDEN, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 04-AR-0689-S |
| } | |
| CITY OF ALABASTER, ALABAMA, } | |
| } | |
| Defendant. } | |
| } | |

**MEMORANDUM OPINION AND ORDER**

The court has before it seven motions. Defendant, City of Alabaster ("Alabaster"), has filed a motion to strike the expert report of Dr. Todd A. Baker and to preclude him from testifying at trial. Alabaster has also filed a motion invoking *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and seeking to strike the expert report filed by Dr. Brian P. Sullivan, Dr. Pia Di Girolamo, and Mr. Lawrence Santucci, and to preclude them from testifying at trial. In addition to these motions, Alabaster has filed a motion seeking summary judgment on both claims of plaintiff, Teresa Varden ("Varden"). Varden has filed a cross-motion for summary judgment only as to her claim for disparate impact. Alabaster has filed motions to strike the affidavits of Varden and Tommy Moon, both submitted by Varden in conjunction with her motion for summary judgment. Varden seeks to have the affidavit of Frank D. Matherson stricken from the record. The motions are resolved as set out herein.

**I.   Dr. Todd A. Baker**

Alabaster moves to strike as untimely the expert report submitted by Drs. Gebhardt and Baker, and to exclude Dr. Baker from participation as an expert witness.  Expert disclosures were due on March 28, 2005.  On June 13, 2005, Varden requested leave to file a rebuttal of the report filed by Alabaster's expert, Dr. Paul C. Di Vico.  The court granted Varden's request for leave on June 14, 2005, and the report was filed on October 7, 2005.  Although Alabaster had no notice of Dr. Baker's participation until that time, the Gebhardt/Baker report was timely if it was a true rebuttal report as defined by F.R.Civ.P. 26(a)(2)(C).  Upon careful consideration, the court finds the report to be designed solely to rebut or contradict the report filed by Dr. Di Vico.  Alabaster claims, without reference to any specific passages in the report, that the Gebhardt/Baker report is based on new information or analysis and should be stricken on this basis.  The court finds that to the extent the Gebhardt/Baker report incorporates new information or analysis, it does so either because that data was not previously disclosed to Varden, or because the subject matter, notably the transportability of the North County test, became relevant only upon the filing of Dr. Di Vico's report.  The court additionally finds that Dr. Baker's assisting of Dr. Gebhardt in drafting the report does not render it inadmissible.  The court exercises its discretion to allow Br. Baker to serve as an expert

witness because doing so does not unfairly prejudice Alabaster, in that it could have deposed Dr. Baker or asked for leave to file a responsive report, but instead chose to wait more than seven months to file this motion.  Alabaster's motion to strike the expert report filed by Drs. Gebhardt and Baker is hereby DENIED.  Dr. Baker is not precluded from serving as an expert witness in this litigation, but Alabaster is not precluded from filing a motion for leave to depose Dr. Baker if it so chooses.

**II.   Dr. Brian P. Sullivan, Dr. Pia Di Girolamo, and Mr. Lawrence Santucci**

Alabaster invokes *Daubert* in seeking to exclude the report filed by Dr. Sullivan, Dr. Di Girolamo, and Mr. Santucci (the "Sullivan report").  Pursuant to *Daubert* and its progeny, the court serves a vital role in guarding against the admissibility of scientific or technical evidence which is either unreliable or irrelevant.

> Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562-63 (11th Cir. 1998).  Neither the experts' qualifications nor the relevance of their testimony to Varden's claim for disparate impact

can be seriously questioned, but Alabaster does dispute the reliability of the Sullivan report.  Rule 702, F.R.Evid., lists three criteria indicating reliability: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Alabaster argues that the Sullivan report is defective in each respect.

As to the data set used by Dr. Sullivan and his colleagues, Alabaster argues that the report is derived from an inaccurate representation of the individuals who took the physical agility test for incumbent firefighters, the test alleged by Varden to have a discriminatory impact on women.  Alabaster's argument in this respect betrays a basic misunderstanding of the reliability inquiry.  Alabaster does not attack the sufficiency of the report's data, but rather the propriety of the specific statistical pool chosen.  The two concepts are logically distinct.  This type of criticism strikes at the credibility of the Sullivan report, but is inapposite to the question of admissibility.  Even the caselaw cited by Alabaster in support of its motion shows that this inquiry is better compartmentalized as a credibility determination: "[s]tatistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of **little probative value**." *In re Employment Discrimination Litigation*

4

*Against State of Ala.*, 198 F.3d 1305, 1312 (11th Cir. 1999) (emphasis added and internal quotations omitted); *see also Cade v. Scott Paper Co.*, 1995 WL 1212919, *3 (S.D. Ala. 1995) (unreported) ("**The weight to be accorded** statistical data depends on . . . whether the data is taken from the appropriate group . . . .") (emphasis added). The Sullivan report is not based on "speculation, conjecture, or inference that cannot be supported by sound scientific principles," *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002), but on a defined data set. Alabaster has not argued that the statistical pool is too small for reliable statistical calculations. Under analogous circumstances, the Eleventh Circuit recently held that the "alleged flaws in [the expert's] analysis are of a character that impugn the accuracy of his results, not the general scientific validity of his methods. The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003). The Sullivan report relies on sufficient data and cannot be excluded on this basis.

Alabaster next argues that the Sullivan report should be excluded because its scientific methodology is not reliable. Specifically, Alabaster proffers that the Fisher's Exact Test is not a reliable technique for statistical analysis. A number of this court's brethren and sistren, however, have held either that

5

the Fisher's Exact Test is an appropriate method of calculating statistical significance or have discussed calculations derived from that test without questioning their reliability. *See, e.g., Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997); *Currier v. United Techs. Corp.*, 326 F. Supp. 2d 145, 154 (D. Me. 2004); *Ross v. Buckeye Cellulose Corp.*, 733 F. Supp. 344, 354 (M.D. Ga. 1989). These cases are considerably more persuasive than Alabaster's *ipse dixit* assertion. The court finds that the Sullivan report utilized a sufficiently reliable methodology and cannot be excluded on this basis.

Alabaster's final contention with respect to the reliability of the Sullivan report is that it incorrectly applies the Fisher's Exact Test. Alabaster alleges only that "it is unclear whether [the report] counted some of the people in the pool more than once." Although it is true that the face of the Sullivan report does not show whether Alabaster's suspicion is correct, it does state: "To test if the outcome is statistically significant, the Fisher's Exact Test is used." While Dr. Sullivan and his colleagues might not have passed an algebra test without "showing their work" on even the simplest mathematical calculation, the court will not impose such an onerous burden on them. The Sullivan report satisfies all three prongs of the reliability inquiry.

Although the initial Sullivan report passes the *Daubert* inquiry, the supplement to the report, attached as Exhibit Z to

6

Varden's reply brief in support of her motion for partial summary judgment, may still be excluded as untimely. Expert disclosures were due on March 28, 2005. Admittedly, this disclosure cannot sneak in through the Rule 26(a)(2)(C) rebuttal window when Varden knew no later than April 7, 2006, the day Alabaster filed its motion for summary judgment, that Alabaster would assert that the incumbent and applicant physical agility tests were dissimilar, and yet she did not disclose these findings until May 26, 2006. Prior to that time, however, the court finds that Varden had received incomplete and/or misleading information as to the distinctions between the incumbent and applicant physical agility tests. *Compare* Reply Report of Dr. Di Vico ("[M]y understanding is that three women have taken the test; two passed, but declined to take a position with the fire department."), *with* Defendant's Motion to Strike Plaintiff's Rule 26(a)(2) Report of Brian P. Sullivan, Ph.D., Pia Di Girolamo, Ph.D., and Lawrence M. Santucci ("[I]t is undisputed that the plaintiff is the only female to ever take the physical ability test that she is challenging in the instant action."). Under these circumstances, the admission of this supplemental report will work no prejudice against Alabaster, and its exclusion would prejudice Varden. Alabaster's motion seeking to strike the Sullivan report and to exclude Dr. Sullivan, Dr. Di Girolamo, and Mr. Santucci is DENIED in full. The Sullivan report and its supplement are admissible evidence, and the experts who

contributed to its preparation are not barred from participation in this proceeding.

### III. Motions for Summary Judgment

Alabaster has filed a motion for summary judgment as to both claims asserted by Varden. Varden has filed a cross-motion for summary judgment only as to her claim for disparate impact. The court EXPRESSLY DETERMINES that one or more genuine issues of material fact exist with regard to each of Varden's claims. Accordingly, the cross-motions for summary judgment are hereby DENIED in full.

### IV. Motions to Strike

Also pending are three motions to strike affidavits submitted in conjunction with the summary judgment motions. Alabaster seeks to strike the declarations of Varden and Tommy Moon, while Varden seeks to strike the declaration of Frank D. Matherson. The court has reviewed the affidavits in question and finds that the information contained therein does not resolve the genuine issues of material fact precluding summary judgment, nor is it necessary to create such genuine issues. Accordingly, the motions to strike are MOOT.

### *Conclusion*

In accordance with the foregoing, Alabaster's motions to strike the expert testimony of Dr. Baker, Dr. Sullivan, Dr. Di Girolamo, and Mr. Santucci are hereby DENIED in full. The motions

for summary judgment filed by both parties are hereby DENIED in full.  The motions to strike the declarations of Varden, Tommy Moon, and Frank D. Matherson are MOOT.

The deadlines for discovery and dispositive motions having passed, the above-entitled case is hereby SET for pretrial conference on **August 7, 2006,** at **9:30 a.m.,** in accordance with the attached pre-trial instructions.

Done this 24th day of July, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE